## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

ALVIN WATTS, III

CRIMINAL ACTION

NO. 16-104-SDD-EWD

### RULING

This matter is before the Court on Defendant, Alvin Watts, III's ("Defendant") Motion to Vacate under 28 U.S.C. § 2255.[1]  The United States of America ("the Government") filed an Opposition[2] to this motion, to which Defendant filed various responses.[3]  The Court has considered all briefs submitted by the parties, and for the following reasons, Defendant's Motion will be denied.

## I.    BACKGROUND

In 2016, a grand jury returned a multi-count indictment against Defendant and other co-defendants stemming from a drug trafficking conspiracy.[4] The indictment charged Watts with: (1) conspiracy to possess, transport, and traffic in embezzled pre-retail medical products and stolen property, violating 18 U.S.C. § 371; (2) trafficking in stolen and embezzled pre-retail medical products, violating 18 U.S.C. § 670; (3) transportation of stolen property, violating 18 U.S.C. § 2314; and (4) receipt, possession, concealment, storage, and sale of stolen property, violating 18 U.S.C. § 2315.[5]

---

[1] Rec. Doc. 393.
[2] Rec. Doc. 422.
[3] Rec. Docs. 437, 447, 452, 453.
[4] Rec. Doc. 1.
[5] *Id*, at p. 14.

Following a jury trial in August 2018, Defendant Watts was convicted of all counts.[6] Defendant appealed to the Fifth Circuit, and the Fifth Circuit rejected all Defendant's claims.[7] Defendant filed a Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure,[8] which this Court denied on November of 2023.[9] The Court now turns to Defendant's Motion to Vacate under 28 U.S.C. § 2255, wherein he asserts four ineffective assistance of counsel claims.[10]

## II.    ARGUMENTS

Defendant claims his counsel was ineffective in the following ways: (1) he did not move to dismiss the indictment based on false testimony;[11] (2) he failed to call several witnesses;[12] (3) he failed to object to the calculation of loss attributable to Defendant;[13] and (4) he failed to object when the Court did not verbally state the forfeiture amount during sentencing, and he failed to object when the Court found untainted assets subject to forfeiture.[14]

The Government opposes Defendant's claims on several grounds. First, regarding the false testimony claim, the Government contends trial counsel was not ineffective because Defendant does not allege facts that show that the testimony was provably false.[15] Next, regarding the failure to call witnesses, the Government maintains there is

---

[6] Rec. Doc. 184
[7] Rec. Doc. 184; Rec. Doc. 350.
[8] Rec. Doc. 343.
[9] Rec. Doc. 485.
[10] Rec. Doc. 393.
[11] Rec. Doc. 393-1, p. 2.
[12] Rec. Doc. 393-1, p. 6.
[13] Rec. Doc. 393-1, p. 11.
[14] Rec. Doc. 393-1, p. 13.
[15] Rec. Doc. 422, p. 2.

no reason to believe the purported additional testimony would have changed the jury's verdict due to the weight of the evidence already in the record.[16] Regarding the calculation of loss issue and the forfeiture claim, the Government argues this claim fails because a lawyer does not provide ineffective counsel when he does not raise a meritless claim.[17]

## III.    LAW AND ANALYSIS

### A.    Relief Under Section 2255

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such a sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." Relief under Section 2255 is limited to "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[18]

The district court must conduct a preliminary review when a Section 2255 motion is filed.[19] "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[20] Next, a court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[21] An evidentiary hearing is required if the prisoner produces any "independent indicia of the

---

[16] *Id.* at pp. 2-3.
[17] *Id.* at p. 3.
[18] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[19] *United States v. Hutton*, No.16-184, 2020 WL 5517332, at *2 (E.D. La. Sep. 14, 2020).
[20] Rules Governing § 2255 Proceedings, Rule 4(b).
[21] 28 U.S.C. § 2255(b).

likely merit of [his] allegations."[22]  The Court finds that no hearing is required because the record conclusively demonstrates that Defendant is not entitled to relief for the reasons which follow.

An issue raised for the first time in a Section 2255 motion will only be considered if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[23] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[24]

### B.    Ineffective Assistance of Counsel

*Strickland v. Washington* articulates the standard for this claim.[25] In *Strickland*, the Supreme Court held that, to obtain relief, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.[26] A deficient performance is one in which the attorney's actions were unreasonable under prevailing professional norms.[27]  A defendant must prove both prongs to succeed in an ineffective assistance of counsel claim.[28]

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[29] "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."[30]  In analyzing counsel's performance, a reviewing court must take

---

[22] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[23] *United States v. Frady*, 456 U.S. 152,167-68 (1982).
[24] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[25] *Strickland v. Washington*, 466 U.S. 668 (1984).
[26] *Id.* at 687.
[27] *Id.* at 688.
[28] *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).
[29] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[30] *Strickland*, 466 U.S. at 688.

into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.[31] The reviewing court must "judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[32] Furthermore, a petitioner must overcome a strong presumption that defense counsel's conduct falls within a wide range of reasonable representation.[33] "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[34]  "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[35] With these principles in mind, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.[36]

Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[37] A reasonable probability is one that is sufficient to undermine confidence in the outcome.[38] Furthermore, "[t]he petitioner must 'affirmatively prove,' not just allege, prejudice."[39] This standard requires a "substantial," not just "conceivable," likelihood of a different result.[40]

---

[31] *Id*. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).
[32] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)(quoting *Strickland*, 466 U.S. at 690).
[33] *Harrington v. Richter*, 562 U.S. 86, 104 (citing *Strickland*, 466 U.S. at 689).
[34] *Bell v. Cone*, 535 U.S. 685, 702 (citing *Strickland*, 466 U.S. at 689).
[35] *Strickland*, 466 U.S. at 689.
[36] *Id.*; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)(counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'")(quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).
[37] *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998).
[38] *Strickland*, 466 U.S. at 694.
[39] *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).
[40] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

In making this determination as to prejudice, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[41] Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.[42]

### 1. Failure to File Motion to Dismiss

Defendant argues his convictions resulted from trial counsel's failure to file a motion to dismiss the indictment.[43] Defendant contends trial counsel performed in a constitutionally deficient manner by failing to challenge his indictment based on allegedly false testimony given to the grand jury by Leroy Bradford.[44] In March 2016, Bradford testified before the grand jury that he witnessed Defendant speak with codefendant Taylor about meeting codefendant Weaver.[45] Bradford also testified that he observed Defendant's phone ring and Weaver's name appear on the screen.[46] Defendant claims these statements were false,[47] and the Government knowingly sponsored false information before the grand jury because it was "obvious that Weaver hid his identity" until after the indictment.[48] Defendant posits had trial counsel filed a motion to dismiss his indictment, it would have been granted, and he would not have been prosecuted or convicted.[49]

---

[41] *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).
[42] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)(citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).
[43] Rec. Doc. 393-1, p. 2.
[44] *Id.* at pp. 2-3.
[45] Rec. Doc. 344-1, pp. 1-3.
[46] *Id.* at p. 3.
[47] Rec. Doc. 393-1, p. 4.
[48] *Id.*
[49] *Id.* at p. 2.

Initially, Defendant fails to show that trial counsel's representation fell below an objective standard of reasonableness in light of the presumption of adequate assistance. Counsel has the discretion to make decisions regarding trial management.[50] "The adversary process could not function effectively if every tactical decision required client approval."[51] While some decisions are reserved to the client, counsel decides things such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.[52] These decisions are "strongly presumed" to be reasonable strategic choices in the representation of the Defendant.[53]

Defendant argues the failure to file a motion to dismiss was not a strategic choice.[54] Rather, Defendant claims counsel merely chose not to challenge his indictment "due to the time and effort it would have taken."[55] But the record is clear that his counsel was in possession of all discovery material, including many grand jury transcripts, which informed what trial strategy to implement;[56] Defendant offers nothing but his own speculation as to his counsel's state of mind. At best, Defendant has only shown that conflicting evidence existed about Weaver's identity. Although Defendant claims Bradford's testimony before the grand jury was the "linchpin" supporting his indictment,[57] Defendant ignores other inculpatory evidence that also supported his indictment.[58]

---

[50] *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018).
[51] *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).
[52] *McCoy*, 584 U.S. at 422.
[53] *Strickland*, 466 U.S. at 690.
[54] Rec. Doc. 437, p. 14.
[55] *Id*.
[56] Rec. Doc. 352-2, 352-3, 352-4, 352-5, 352-6, & 352-7.
[57] Rec. Doc. 437, p. 17.
[58] Namely, Defendant ignores the following testimonial evidence which was available to the United States and could have been used to support the indictment: (1) During a traffic stop in Tennessee, Taylor and Landy's vehicle was searched and the police found two bags containing a large number of prescription bottles without any prescription labels (Rec. Doc. 418-8, p. 5-6); (2) Taylor reported that he was employed by Watts and regularly traveled to Washington D.C. to pick up HIV medication for Watts (Rec. Doc. 418-8, p. 5-6); (3) Watts gave money to Taylor to buy the medication (Rec. Doc. 418-8, p. 6); and (4) Watts placed

Defendant has offered no evidence to demonstrate that his trial counsel had a reasonable basis to challenge his indictment. "An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."[59] Accordingly, relief as to this claim is denied.

### 2. Failure to Call Witnesses, Investigate, and Introduce Evidence

Next, Defendant argues his conviction was caused by trial counsel's failure to call certain witnesses, investigate, and introduce evidence which he claims would have provided reasonable doubt as to his guilt.[60] Defendant further asserts that trial counsel performed in a constitutionally deficient manner by failing to raise certain defenses through the introduction of certain witness testimony.[61]

Notably, defense counsel has the prerogative over trial strategy, including whom to call as witnesses, even when the defendant disagrees,[62] and courts are required to be highly deferential to the trial strategy of criminal defense counsel. There is also no evidence before the Court that trial counsel failed to investigate Defendant's defenses;

---

the medication from Washington D.C. into prescription bottles and then distributed the medication to patients (Rec. Doc. 418-8, p. 6). Additionally, evidence included phone records showing communication between Watts and Weaver (Rec. Doc. 187-72); bank records corroborating Taylor's testimony (Rec. Doc. 187-26); and an audit showing Watts's pharmacy dispensed and billed for more medication than it purchased from other suppliers reported (Rec. Doc. 187-54; Rec. Doc. 187-55; Rec. Doc. 187-70; Rec. Doc 187-73). Further, the jury found Watts guilty beyond a reasonable doubt at trial without Bradford's allegedly false testimony. Thus, the indictment did not solely rely on Bradford's testimony because the other evidence was sufficient to support an indictment.

[59] *U.S. v. Mingo*, 2014 WL 4443485 at *4 (E.D. La. Sep. 9, 2014)(quoting *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir.2004) ("Because the claim ... is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); Smith v. Puckett, 907 F.2d 581, 585 n. 6 (5th Cir.1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.")(internal quotation marks omitted).

[60] Rec. Doc. 393-1, p. 6.

[61] *Id.*

[62] *McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018).

rather, it appears trial counsel did not find evidentiary support to take the strategic steps Defendant now promotes. In any event, this Court previously held in *United States v. Ohia*:[63]

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.[64]

For the reasons below, and because the record in this case overwhelmingly supports Defendant's convictions, he is not entitled to the requested relief on these claims.

The United States Fifth Circuit Court of Appeals instructs:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.[65]

Critically, Defendant has not presented any affidavits from these uncalled witnesses demonstrating that they were available to testify at the trial and would in fact have testified in a manner beneficial to his defense. Defendant offers as exhibits several

---

[63] No. 13-139-SDD-EWD, 2017 WL 1088081 (M.D. La. Mar. 22, 2017).
[64] *Id.* at *4 (citations omitted).
[65] *Woodfox v . Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (quotation marks and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

case notes by investigators that are comprised of information provided by these witnesses.  But these statements are not sworn, and the Court cannot glean from this evidence whether the witnesses were available to testify at trial, nor does Defendant detail the specific contours of the testimony he claims would have exonerated him.  Thus, Defendant has failed to meet his burden of proof with respect to this claim as to the proposed witnesses.[66]  Even if the Court credited Defendant's exhibits as evidence of what each witness would have testified to at trial, he has failed to demonstrate how the testimony of any of these witnesses would have exonerated him, as set forth above. The court will address each uncalled witness below.

### a. Steven Mays Testimony

Defendant claims his counsel was ineffective for failing to call Steven Mays to testify that AmerisourceBergen, the supplier of the stolen HIV drugs to the Washington D.C. Department of Health (DOH), did not send extra medication to the DOH Warehouse.[67] Defendant contends this hypothetical testimony would have rebutted Debrah's and Weaver's testimonies by demonstrating that no actual theft took place at all.[68] The Court previously grappled with this issue when considering Defendant's Motion for New Trial.  The undersigned explained:

---

[66] *See, e.g., Cox v. Stephens*, 602 F. App'x 141, 146 (5th Cir. 2015) (rejecting claim that counsel was ineffective for failing to call witnesses at trial, noting, "Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified; identify the content of their testimony; or support that their testimony would have been favorable"); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").
[67] Rec. Doc. 393-1, p. 7.
[68] *Id.* at p. 8.

Defendant contends if no victim can be identified, he is not guilty and there is no loss. Judge Africk expressly rejected this argument, instructing that a defendant does not absolve himself from responsibility for a loss just because the victim cannot be determined between two entities: "the general rule calculating the total loss amount pays no regard to the identity of the victim." Thus, he determined that identifying the victim was irrelevant when calculating the loss in this case.[69]

The Government was not required to prove who the stolen medication belonged to; rather, it only had to prove that the medication did not belong to Defendant, and that is what the jury found. Accordingly, Mays's testimony regarding ownership of the medication is of no moment; and such testimony would not have undermined Defendant's theft conviction. Relief on this claim is denied.

### b. Carolyn Price Testimony

Next, Defendant claims his counsel was ineffective for failing to investigate or interview DOH warehouse employees at trial—namely, Carolyn Price.[70] Defendant argues that proper investigation would have provoked trial counsel to call Carolyn Price to testify that the DOH warehouse records did not show any discrepancies, and AmerisourceBergen did not ship extra HIV medication, thus undermining the allegation of theft.[71]

Again, to overcome the presumption of adequate assistance, Defendant must show how this decision was unreasonable.[72] Instead, Defendant merely asserts that Price's potential testimony of a lack of discrepancies in the warehouse records shows lack of theft—without regard to other inculpatory evidence.[73] Moreover, as the

---

[69] Rec. Doc. 485, pp. 6-7.
[70] Rec. Doc. 393-1, p. 8.
[71] *Id.*
[72] *Strickland*, 466 U.S. at 690.
[73] Rec. Doc. 393-1, pp. 8-9.

Government aptly points out, citing to the trial record:

> Weaver and Debrah both worked at DOH, embezzled medication held there, and eventually sold it to a pharmacist in Louisiana and his associates. See Doc. 314 at 88–132. Both Weaver and Debrah maintained DOH's inventory. Doc. 314 at 39, 41, 91, 111. They wrongfully set aside "extra" medication from the inventory that did not belong to them. Doc. 314 at 94–95, 112–114, 122. So, **their inventory records would necessarily be inaccurate; the record keepers were the thieves**.[74]

Weaver testified that he manipulated the inventory so it would appear there were no problems with the records.[75] Price's purported testimony would seemingly only confirm this fact.[76] Defendant is not entitled to his own conclusions of law, and he fails to show that counsel's decision not to waste time calling Price to testify was so unreasonable as to constitute ineffective representation.

### c. Forensic Accountant

Defendant also claims trial counsel was ineffective in failing to call at trial a forensic accountant associated with the Frier and Levitt law firm.[77] Defendant submitted as evidence a draft forensic accounting report prepared by this firm.[78] Defendant contends this report demonstrates that the Government's audit introduced at trial was inaccurate and unreliable evidence.[79] Defendant further claims this report supports his theory that no theft occurred and the Court's loss calculation was improper.[80] Defendant argues the report exposes the Government's evidence as not reliably showing an inventory shortfall.[81]

---

[74] Rec. Doc. 422, p. 24 (emphasis added).
[75] Rec. Doc. 314, pp. 112–113, 115; *see also* Rec. Doc. 314, p. 94.
[76] *See* Rec. Doc. 343-1, p. 11.
[77] Rec. Doc. 393-1, p. 9.
[78] Rec. Doc. 387-1, pp. -8.
[79] Rec. Doc. 393-1, p. 10.
[80] *Id.*
[81] *Id.* at p. 9.

This is, again, a strategic choice within the discretion of defense counsel. Defendant's burden here is to show "with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[82]  Defendant has not carried this burden as the report does not explain with any specificity what error(s) are in the Government's audit; rather, the report simply sets forth conclusions that the Government's report is unreliable, which is curious since Defendant's forensic accountant also noted an inventory shortfall.[83]  The Court will not revisit the issue that a theft occurred. Defendant again ignores the wealth of inculpatory evidence submitted against him and relies on a draft document, not in final form, that contains conclusions regarding hypothetical circumstances which might support the "appearance" of an inventory shortfall.[84]  Defendant's arguments that the report would exonerate him are highly speculative as there is no evidence before the Court that a final report was prepared.[85]

Additionally, the Government maintains that the draft report is "double-edged in nature" because "[w]hatever the differences between Watts's audit and the United States' audit, Watts would not have been able to account for the amount of HIV drugs in Doc-Your-Dose's inventory. In other words, the report, by itself, was not able to provide a wholly innocent explanation for the company's inventory."[86]  The Court agrees.  The draft report could have provided further proof of the Defendant's guilt; thus, it was not unreasonable for his trial counsel to choose not to call the forensic accountant at trial.[87]

---

[82] *Trotti v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013) (quoting *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011)).

[83] Rec. Doc. 387-1, p. 7, p. 4.

[84] *Id.* at pp. 6-8.

[85] *See* Rec. Doc. 422, p. 35 (The Government notes: "As the watermark on the report shows, it is a draft report and may contain significant errors that would be omitted in the final product. *E.g.* Doc. 387-1 at 8.").

[86] *Id.*

[87] The Government notes that trial counsel *did* use the findings in the report to question the credibility of the Government's audit at sentencing, but those arguments were rejected by the Court.  Rec. Doc. 288, 278.

"A tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance."[88] Therefore, Defendant is not able to show that counsel's representation fell below an objective standard of reasonableness on this claim.

### d. Napue *Violation*

In conclusion, Defendant asserts a *Napue* violation on the grounds that, because of his counsel's allegedly ineffective assistance, the Government permitted Weaver and Debrah to give false testimony about the origin of the HIV medication.[89] The Due Process Clause forbids the Government from knowingly using or failing to correct false testimony.[90] To successfully assert a *Napue* violation, the Defendant must demonstrate that: (1) the testimony was false, (2) the Government knew that the testimony was false, and (3) the testimony was material.[91]

This is a repackaged attempt at arguing that, because the ownership of the stolen medication could not be conclusively determined, Defendant committed no theft.  First, Defendant has presented no evidence to support his claim that Weaver and Debrah gave false testimony. Further, Defendant offers nothing beyond his own subjective speculation that the Government knew this testimony was false but still allowed it to be presented at trial.  Conclusory allegations are insufficient to raise a constitutional issue,[92] and that is all that Defendant has offered here.  Defendant is not entitled to relief for this claim.

---

[88] *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997).
[89] Rec. Doc. 393-1, p. 11.
[90] *Napue*, 360 U.S. 264, 269 (1959).
[91] *United States v. Stanford*, 823 F.3d 814, 838-39 (5th Cir. 2016).
[92] *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989).

### 3. Failure to Object to Loss Amount

Defendant contends his counsel was ineffective for failing to object to the Court's purported failure to make a threshold determination regarding whether any loss occurred prior to calculating the loss amount.[93] Alternatively, Defendant claims his counsel was ineffective by failing to argue that the HIV medications he allegedly stole would have expired and therefore been valueless.[94]

Prior to calculating loss, a court must make a threshold determination that an actual loss in the form of "reasonably foreseeable pecuniary harm" resulted or was intended to result from the offense.[95] During sentencing, defense counsel conceded that a loss occurred,[96] and the Court noted that Defendant "does not dispute that the theft occurred and that some entity suffered pecuniary harm as the result of the offenses for which Watts was convicted."[97] Defense counsel had no basis to argue that the Court failed to determine that a loss occurred because the point was conceded. Accordingly, this claim is without merit.

Alternatively, Defendant contends that counsel was ineffective for failing to raise the argument that the HIV medication "would have expired" and therefore would not have been a loss.[98] This claim is truly grasping at straws. The stolen medication was not expired and would not have expired for many months.[99] Defendant presents no facts or supporting evidence that any stolen HIV medication was expired or was going to be

---

[93] Rec. Doc. 393-1, p. 11.
[94] *Id.* at p. 13.
[95] *United State v. Bays*, 765 F. App'x 945, 952 (5th Cir. 2019) (quoting U.S.S.G. § 2B1.1(b)(1) cmt. N.3(A) (2014)).
[96] Rec. Doc. 288, p. 3.
[97] *Id.* at p. 7.
[98] Rec. Doc. 393-1, p. 13.
[99] Rec. Doc. 187-171, p. 1-2; Rec. Doc. 314, pp. 167-87; Rec. Doc. 187-13—187-23.

destroyed. Rather, facts demonstrate that DOH planned to distribute the HIV medication to indigent individuals who could not have otherwise afforded the medication.[100] Accordingly, it was far from ineffective for defense counsel to decline to raise such a baseless and unreasonable objection not grounded in fact or law.

4.  Failure to Object to Court's Failure to Orally Pronounce Forfeiture

Finally, Defendant contends his counsel was ineffective for not objecting when the sentencing Court failed to orally pronounce the amount of a money judgment forfeiture.[101] Defendant asserts that his home was not subject to forfeiture because it was purchased by "clean money" – not money gained by way of stealing and selling HIV medications.[102] Defendant further asserts that the forfeiture should relate to his gain, and he did not gain anything from this theft.[103]

Federal Rule of Criminal Procedure 32.2(b)(4)(B) provides that "the court must include the forfeiture when orally announcing the sentence *or must otherwise ensure that the defendant knows of the forfeiture at sentencing*."[104] Based on the record in this matter, the Court ensured that Defendant knew of the impending forfeiture, which included his home, by the time he was sentenced.[105] This procedure serves "a vital function in ensuring that a defendant has notice of a criminal forfeiture and an opportunity to challenge any forfeiture sought by the government."[106] Violations of Rule 32.2 are subject to Rule 52(a).[107] Claims regarding Rule 32.2 violations must be disregarded if no

---

[100] Rec. Doc. 314, pp. 35-38.
[101] Rec. Doc. 393-1, p. 13.
[102] *Id.* at pp. 15-16.
[103] *Id.* at p. 16.
[104] Emphasis added.
[105] *See United States v. Gomez*, 548 F. App'x 221, 227 (5th Cir. 2013), *see also United States v. Garcia*, 625 F. App'x 680, 684 (5th Cir. 2015).
[106] *United States v. Marquez*, 685 F.3d 501, 509 (5th Cir. 2012).
[107] Fed. R. Crim. P. 52(a).

prejudice results.[108] Here, the Defendant was given ample notice and opportunities to challenge the forfeiture. The Government provided notice in the indictment that it would seek a forfeiture.[109] Subsequently, the Government provided multiple notices and opportunities to object to the forfeiture.[110] Thus, as a matter of fact and law, there was no basis for defense counsel to raise the objection Defendant now promotes.

Also unavailing is Defendant's claim that the forfeiture amount should have related only to his criminal gains, and his home should have been excluded because it was bought with "clean money." In *United States v. Berry*, the Fifth Circuit rejected such an argument, holding that these types of money judgments are not foreclosed by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the statutes applicable to this case.[111] Rule 32.2(e) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(p) authorize the forfeiture of substitute assets – like a defendant's home – when certain conditions are met, and the Court concluded these conditions were met in this case.[112]

In *United States v. Olguin*, the Fifth Circuit held that a forfeiture money judgment under 21 U.S.C. § 853 should be calculated based on the gross amount the conspiracy yielded, not how much a defendant gained or profited.[113] While *Olguin* was decided pursuant to a different statute, the Fifth Circuit extended its reasoning to a claim like this

---

[108] *United States v. Berry*, 795 F. App'x 229, 239 (5th Cir. 2019) (citing *United States v. Farias*, 836 F.3d 1314, 1330 (11th Cir. 2016)).

[109] Rec. Doc. 1, p. 10.

[110] The United States filed a criminal forfeiture trial brief. Rec. Doc. 133. The United States filed two supplements to the criminal forfeiture trial brief. Rec. Doc. 136; Rec Doc. 141. The Court ordered a preliminary order of forfeiture after trial but eight months prior to sentencing. Rec. Doc. 188. The United States requested a preliminary order of forfeiture of the home at issue here three months prior to sentencing. Rec. Doc. 250. The Court ordered a preliminary order of forfeiture of Defendant's rights in the home at issue. Rec. Doc. 251. During allocution, Defendant had the opportunity to object but did not. Rec. Doc. 312, p. 25.

[111] *United States v. Berry*, 795 F. App'x 229, 239, 241 (5th Cir. 2019)(citing *United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016)).

[112] *See* Rec. Doc. 251.

[113] *United States v. Olguin*, 643 F.3d 384, 400 (5th Cir. 2011).

one in *United States v. Nagin*.[114]  The Fifth Circuit held that "there is a logical inconsistency in holding that a forfeiture order reaches only profits and not receipts… Such a holding would excuse monies spent on the cost of running the conspiracy and the enterprise"[115] Indeed, "the exclusion of personal money judgments would undermine the purpose of criminal forfeitures."[116]  At the time of this conspiracy, Defendant was a part-owner of Doc-Your-Dose.[117]  Defendant has presented no authority suggesting that he is not accountable for the full value of the medication he illegally sold in Doc-Your-Dose, whether or not he directly pocketed the money. Defendant decided to place the stolen medication in Doc-Your-Dose's inventory although he could have chosen another method to sell it. Thus, Defendant's company gained an economic benefit from every pill sold, which indirectly guaranteed that he would receive his salary.[118] None of the proceeds from the sale of the stolen medication rightfully belonged to Doc-Your-Dose (or to any other entity to which the revenue may have been distributed), and Defendant cannot now advance an argument in good faith that those ill-gotten gains are not attributable to him. Accordingly, there is no basis in fact or law that would have supported his counsel objecting to the forfeiture for the reasons alleged by Defendant.  Relief under this claim is denied.

---

[114] 810 F.3d at 353.
[115] *Olguin*, 643 F.3d at 400.
[116] *Nagin*, 810 F.3d at 353.
[117] Rec. Doc. 314, p. 60.
[118] *See* Doc. 393-1, pp. 16–17.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate under 28 U.S.C. § 2255.[119] is DENIED.  In accordance with this Ruling and the Court's prior Ruling on Defendant's Motion for New Trial,[120] the following pending motions are also DENIED: Motion for Government to Produce Any and All Grand Jury Transcripts Including Testimonies[121] and Motion for Discovery.[122]  Defendant's Motion to Proceed in Forma Pauperis[123] is DENIED as moot in light of the currently pending Motion for the same relief.[124] Defendant's Motion for Expedited Hearing for the Modification of Sentence[125] is DENIED as moot. Defendant's Motion for Reconsideration/Reverse Convictions[126] is DENIED for Defendant's failure to address or satisfy the elements for the Court's reconsideration of the denial of his Motion for New Trial.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  27th day of March, 2024.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[119] Rec. Doc. 393.
[120] Rec. Doc. 485.
[121] Rec. Doc. 385.
[122] Rec. Doc. 430
[123] Rec. Doc. 390.
[124] Rec. Doc. 488.
[125] Rec. Doc. 476.
[126] Rec. Doc. 479.  This "Motion" is essentially a letter to the Court from Defendant reiterating his innocence and advising the Court of his current circumstances.  It contains no legal arguments or authority to support the requested relief.